# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GRETA FAISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1447 (RMC) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Greta Faison, sixty-one years of age, complains that the District of Columbia twice discriminated against her on the basis of her age in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, when it failed to promote her in January and September of 2005 and awarded the positions to younger women. Ms. Faison's claims under the DCHRA will be dismissed due to her failure to provide notice to the Mayor of the District of Columbia within six months of the alleged discrimination as required by D.C. Code § 12-309. Ms. Faison's claim that her non-selection for a promotion in January 2005 violated the ADEA also will be dismissed because she failed to timely file an EEOC charge. However, the Court finds that Ms. Faison timely filed an EEOC charge with respect to her claim of non-selection in September 2005 and, furthermore, that she has presented sufficient evidence for a jury to find that the District's reasons for her non-selection were a pretext for discrimination. Therefore, for reasons set forth below, Ms. Faison may proceed with her claim of discriminatory non-selection in September 2005.

## I. FACTS

Ms. Faison is employed as a Child Support Enforcement Specialist at the DS-11 level in the Child Support Services Division ("CSSD") of the D.C. Office of Attorney General.  Am. Compl. [Dkt. # 23]  ¶ 5.  She has held this position since November 1999.  *Id.*  She completed college in 1970 and has completed many graduate level courses.  *Id.*  Her position was in the Customer Service Unit.  *See id.*  ¶ 8.

On December 28, 2004, Ms. Faison applied for two DS-12 level positions in the CSSD: a Supervisory Management Analyst (Intake), CB-05-59, and a Supervisory Management Analyst (Customer Service Unit), CB-05-60.  *Id.*  ¶ 6.  Roscoe Grant, Jr., the former Deputy Director of Operations of the Division, had written a letter recommending her for a supervisory position, due in part to her "Outstanding" evaluations and service.  *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") [Dkt. # 29] at 3.  On January 4, 2005, Ms. Faison was told that she was not selected for either position because she had no directly-related experience and she did not have experience working in the units where the positions were located.  Am. Compl. ¶ 7.  The Supervisory Management Analyst (Intake) position was awarded to Renee Worley, a woman in her twenties, who did not have a college degree.  *Id.*

Ms. Faison filed a protest with the CSSD concerning her exclusion from the Supervisory Management Analyst (Customer Service Unit), CB-06-60, because she was working in that very unit and had experience in it.  *Id.* ¶ 8.  The vacancy announcement was thereafter cancelled and the position continued to be occupied, on the basis of a temporary detail, by Rocelia Johnson. *Id.*  ¶ 6.  Ms. Johnson, who was thirty-seven, had been detailed non-competitively to the position in August 2004.  *Id.*

The Supervisory Management Analyst (Customer Service Unit) position was re-posted in June 2005 under Vacancy Number 1312. *Id.* ¶ 10. Both Ms. Faison and Ms. Johnson applied. *Id.* ¶¶ 11, 12. Each was interviewed by a panel that made a recommendation to the final selecting official. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") [Dkt. # 27] at 2-3. The panel was composed of Glenna Ellis, Joseph Allen, and Michael Hailey. Ms. Ellis and Mr. Allen work directly for Benidia Rice, the Division Director. Pl.'s Opp'n. at 5. The panel recommended that Ms. Johnson be awarded the position, based in significant part on her year's experience in the job and her superior answers to their questions. *See* Def.'s Mem. at 9-10; Pl.'s Opp'n at 19-20. Ms. Rice adopted the recommendation and awarded the position to Ms. Johnson in September 2005. Am. Compl. ¶ 12.

Ms. Faison filed a Charge of Discrimination with the Equal Employment Opportunity Commission on December 5, 2005, which was cross-filed with the D.C. Office of Human Rights. She complained of discrimination based on her age, in violation of the ADEA and the DCHRA. The EEOC issued a Right to Sue letter on May 9, 2007, and Ms. Faison filed this suit on August 10, 2007. She seeks a promotion, backpay, compensatory damages, litigation expenses and reasonable attorney fees. At the end of discovery, the District filed a Motion for Judgment on the Pleadings and/or Motion for Summary Judgment [Dkt. # 27] which is now ripe for resolution.

## II. LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Anderson v.*

*Liberty Lobby, Inc.*,  477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson*, 477 U.S. at 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*  In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50

(citations omitted).

Pursuant to the ADEA, it is illegal for an employer to terminate, fail to hire or promote, or otherwise discriminate against any individual "because of" such individual's age.  29 U.S.C. § 623.  The Supreme Court recently held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action."  *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2352 (2009).  "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Id.* at 2349.  An individual who wishes to challenge an employment practice under the ADEA must first file a charge with the EEOC. 29 U.S.C. § 626(d)(1).  In the District of Columbia, where there is a local anti-discrimination agency, this charge must be filed within 300 days of the occurrence of the allegedly unlawful practice.  *See id.*  If the employee does not timely file an EEOC charge, she may not challenge the allegedly discriminatory employment practice in court.  *See Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998).

The DCHRA makes it unlawful for an employer to discharge or refuse to hire an individual "wholly or partially for a discriminatory reason based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual." D.C. Code § 2-1402.11(a)(1).  An individual who wishes to challenge an employment practice under the DCHRA must file a charge with the D.C. Office of Human Rights within one year after the occurrence of the discriminatory practice.  *Id.* § 2-1403.04(a).

This Circuit applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to cases brought pursuant to the ADEA and DCHRA. *See Paquin v. Fannie Mae*, 119 F.3d 23, 26, 26 n.1 (D.C. Cir. 1997); *Mianegaz v. Hyatt Corp.*, 319 F. Supp. 2d 13, 20 (D.D.C. 2004) ("[T]he same analytical framework applies to both ADEA and DCHRA claims.").

> Under the first step of McDonnell Douglas the complainant must establish a prima facie case of discrimination. In the ADEA context a complainant makes his required prima facie showing if he (i) belongs to the protected age group, (ii) was qualified for the position, (iii) was terminated [or not selected] and (iv) was replaced by a younger person.

*Paquin*, 119 F.3d at 26. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employer's action. *Id.*; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant meets this burden, then the plaintiff must have the opportunity to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons, but were a "pretext" for discrimination. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804. However, it is rarely necessary for courts to begin their analysis with a plaintiff's prima facie case:

> [W]here an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not — *and should not* — decide whether plaintiff actually made out a prima facie case under *McDonnell Douglas*.

*Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). Rather, the Court should move directly to the third prong of the *McDonnell Douglas* framework and

consider only whether the plaintiff has provided sufficient evidence for a reasonable jury to find that the defendant's stated reasons are a pretext. *Id.*

### III. ANALYSIS

Ms. Faison's allegations arise under both federal and D.C. law which, for immediate purposes, function differently. Under the ADEA, an employee must file an age discrimination charge within 180 days of the event(s) complained of unless she is in a state that has a state human rights agency, in which event the time period for filing is 300 days. *See* 29 U.S.C. § 626(d)(1). D.C. is treated as a state and it has a human rights agency, which means that an employee in the District must file an age discrimination charge within 300 days of the offending event. The DCHRA is somewhat more generous: charges of age discrimination under that law must be filed within a year of the allegedly discriminating event. *See* D.C. Code § 2-1403.04(a). Filing a charge with the D.C. Office of Human Rights is not sufficient by itself, however; under local law, a person also must notify the Mayor within six months of the alleged discrimination in order to be able to sue in court. *See* D.C. Code § 12-309. These provisions affect Ms. Faison's allegations here.

### A. Claims Under the ADEA

#### 1. January 2005 Non-Selection

Ms. Faison argues that the District of Columbia violated her rights under the ADEA when it failed to promote her in January 2005. She learned informally in that month that she would not receive either of the two positions for which she had applied because she lacked experience in the relevant unit, an excuse that was clearly not applicable to the supervisory vacancy in the Customer Service Unit where she had been working since 1999 and for which she had a letter of recommendation for her outstanding performance. When Ms. Faison complained that she did have

relevant experience, the vacancy announcement was cancelled.   This very curious set of circumstances might support an inference of discrimination, but Ms. Faison did not file her charge of age discrimination until December 5, 2005, well over 300 days later.   Seeking to avoid the conclusion that her charge is time-barred, she argues that she has not, even yet, received formal notice from the District of her non-selection.   This argument must fail.

Procedural provisions of the ADEA often mirror those of Title VII, and to that extent are interpreted the same way by courts.  *See, e.g., Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979) (finding that because Title VII and the ADEA share the common purpose of eliminating workplace discrimination, similarly worded provisions of the two statutes should be given the same construction); *Schuler v. Pricewaterhousecoopers, LLP*, 514 F.3d 1365, 1376 (D.C. Cir. 2008) (finding that "the Supreme Court has announced 'a guiding principle for construing the provisions of Title VII,' which applies with equal force to the ADEA") (internal citations omitted).   In construing Title VII, the Supreme Court has held that

> discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).   Discrete discriminatory acts include, but are not limited to, "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114.   Thus, the failure to promote Ms. Faison in January 2005 was a "discrete act" which triggered the statutory clock for filing an EEOC charge.   This Court has held that the statutory clock in a discrimination case begins to run when a plaintiff knows or should have known of the defendant's discriminatory action. *Se Schrader v. Tomlinson*, 311 F. Supp. 2d 21, 27 (D.D.C. 2004)

("[A] plaintiff may not rely on the continuing violation theory where she was aware of the discriminatory conduct at the time it occurred."); *Wiggins v. Powell*, Civil Action No. 02-1774, 2005 U.S. Dist. LEXIS 3984, at *50 (D.D.C. Mar. 7, 2005) (dismissing plaintiff's claims where "he had reason to know of – and had actual knowledge of – the alleged gender and age-based discrimination against him in November, 2000, and did not initiate contact with an EEO counselor or file the present suit until approximately two years later."); *Rendon v. District of Columbia*, Civil Action No. 85-3899, 1986 U.S. Dist. LEXIS 17463, at *14 (D.D.C. Nov. 19, 1986) (granting summary judgment to defendant with respect to claims plaintiff "knew or should have known arose" more than 180 days prior to the filing of an EEOC charge).

   Ms. Faison received notices regarding her non-selection for Supervisory Management Analyst (Intake), CB-05-59, and Supervisory Management Analyst (Customer Service Unit), CB-05-560, on January 4, 2005.  Am. Compl ¶ 7.  Regardless of whether these notices were "formal," it is clear that from that point forward Ms. Faison knew of her non-selection.  Furthermore, by her own admission, Ms. Faison overheard Renee Worley state in January 2005 that she (Ms. Worley) had received one of the promotions, and she also knew at that time that Rocelia Johnson had been "non-competitively" selected for the other.  *Id.* ¶¶ 6 & 9.  It follows that Ms. Faison knew or reasonably should have known of the allegedly discriminatory action — she was not selected for a position for which she was qualified, and a younger, apparently less-qualified individual was selected in her stead.  Thus, Ms. Faison's ADEA claim regarding her January 2005 non-selection will be dismissed.

   *2.  September 2005 Non-Selection*

   Ms. Faison also charges the District of Columbia with age discrimination in violation of the ADEA because she was not selected when she applied again for the same supervisory vacancy

in the Customer Service Unit when it was re-posted in June 2005 and a younger woman was awarded

the job.  As to this instance of non-selection, of which she learned in September 2005, her December

2005 charge is timely.

The Court therefore turns to the merits of this second allegation, for which the

Supreme Court's recent decision in *Gross v. FBL Financial Services*, 129 S. Ct. 2343, provides new

instructions for applying the provisions of the ADEA.  Closely examining the text of the statute, the

Court noted that 29 U.S.C. § 623(a) prohibits an employer from discriminating against an individual

"because of such individual's age," 129 S. Ct. at 2350, and then held that the "ordinary meaning"

of "because of" an individual's age is that age was the "but-for" cause of the adverse employment

action.  *Id.*  Thus, under *Gross*, Ms. Faison bears the burden of showing by a preponderance of the

evidence that the District failed to promoted her "because of" her age — that is, that her age was the

"but-for" cause of the decision to promote a younger woman.

The District alleges that Ms. Faison and Ms. Johnson were each interviewed by a

panel and asked the same questions, after which the panel determined Ms. Johnson "provided better

responses" to the interview questions and "had more experience related to the position."  Def.'s

Mem. at 9-10.  Faced with this legitimate non-discriminatory reason for Ms. Johnson's selection, *i.e.*,

superior performance during the interview and directly relevant experience, the Court must consider

"all relevant evidence" to determine whether a reasonable jury could find that the District's stated

reason is a pretext for discrimination.  *Brady*, 520 F.3d at 495; *Adeyemi v. District of Columbia*, 525

F.3d 1222, 1227 (D.C. Cir. 2008).  "All relevant evidence" includes, *inter alia*, evidence of the

plaintiff's prima facie case and evidence proving the employer's proffered reasons to be false, see

*Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998), as well as the evidence presented

by the defendant.  *See Brady*, 520 F.3d at 495; *Adeyemi*, 525 F.3d at 1227.

Ms. Faison contends that the interviews given the two candidates were not similar. She notes that the younger selectee, Ms. Johnson, was asked by the panel, "Do you have any management experience?" but that Ms. Faison was not.  *See* Pl.'s Opp'n at 5.  Panel member Joseph Allen testified that Ms. Johnson's experience holding the position for almost a year on a detail played a key role in her selection.  As a result, Ms. Johnson "was able to articulate some of the processes and procedures which the organization entails, utilizes."  *Id.* Ex. E (Deposition of Joseph Allen) at 36.  Pressed to explain his statement, Mr. Allen added, "I mean based on what the job description was and what the duties of the job description says, [Ms. Johnson] was able to interpret, now [sic] articulate her experience and relevance of demonstrating some of those duties that was [sic] presented."  *Id.*

Ms. Faison further argues that "[t]here are several problems with the selection" of Ms. Johnson.  Pl.'s Opp'n at 18.  First, she asserts that Ms. Rice "gave the selectee an illegal advantage" and, in effect, pre-selected her by detailing Ms. Johnson to the position to gain experience because she had had "no experience as a supervisor or in Customer Service."  *Id.*  Second, she notes that Ms. Johnson held the position for more than 120 days, contrary to D.C. policy, and no one else from the unit was offered the opportunity to rotate into it.  *Id.*  Third, she argues that she was given a false reason for her non-selection in January 2005 and, when she complained, the posting was cancelled rather than award it to her.  *Id.*  Fourth, Ms. Johnson was affirmatively asked about her management experience but Ms. Faison was not.  *Id.* at 21.  Fifth, contrary to D.C. practices, the interview panel did not rate or rank the candidates.  *Id.* & Ex. G (Excerpts from Appendix A to the Merit Staffing

Plan).[1]  Finally, it is clear that Ms. Faison was qualified for the position,[2] is in a protected class, and

that the selectee was much younger than she.

        The Court pauses over only two of these alleged proofs:  Ms. Johnson's detail and

the false reason given for Ms. Faison's non-selection in January 2005.   While neither of these is

actionable, each is evidentiary.  As to Ms. Johnson, she came from a different unit, had never worked

in customer service or as a supervisor, and yet was detailed to the job.  And Ms. Faison was told in

January 2005 that she was denied the promotion because she had no experience in customer service,

which she clearly did, and which had been considered an insufficient basis to bar Ms. Johnson from

performing the job on a detail.  Most tellingly, the District of Columbia provides no explanation for

why Ms. Faison was supplied with a false reason for her non-selection in January and why the

posting was then cancelled.

        The case may be thin but the Court cannot say that no jury, finding such facts and

evaluating the credibility of witnesses, could not find Ms. Faison's age was the reason for her non-

selection.  The District argues that Ms. Faison has not demonstrated a connection between her age

and her non-selection.  This is not quite accurate.  Ms. Faison has presented a prima facie case and

D.C. has failed to explain or even address why it was that the inexperienced younger Ms. Johnson

was detailed into the job (after which detail – *mirabile dictu*! – she had experience) and the

experienced older Ms. Faison was first told her lack of experience caused her not to be selected in

---

[1]  Ms. Faison also offers some hearsay declarations to support her case but they are inadmissible and will not be relied upon.

[2]  The District argues that Ms. Faison has not made out a prima facie case because she has not demonstrated that she was qualified for the position.  The Court concludes that her performance ratings and letter of recommendation from Mr. Grant are sufficient to demonstrate that she was qualified.

January 2005 and then, when she protested, the vacancy notice was cancelled, to be reposted when Ms. Johnson's experience factor had grown. As the non-movant, Ms. Faison is entitled to have the inferences drawn in her favor. The District's motion for summary judgment on Ms. Faison's ADEA claim concerning her September 2005 non-selection will be denied.

### B. Claims Under the DCHRA

In addition to her ADEA claims, Ms. Faison alleges that her non-selection in both January 2005 and September 2005 violated the DCHRA. On December 5, 2005, Ms. Faison filed a charge of discrimination with the EEOC, which was cross-filed with the D.C. Office of Human Rights. Am. Compl. ¶ 12. Thus, both the January 2005 non-selection claim and September 2005 non-selection claim are timely, having been filed within the one year statutory limitation under the DCHRA. However, pursuant to D.C. Code § 12-309, a plaintiff wishing to sue the District of Columbia also must notify the Mayor. "Compliance with the statutory notice requirement is mandatory and a prerequisite to filing a suit against the District of Columbia 'because it represents a waiver of sovereign immunity.'" *Johnson v. District of Columbia*, 572 F. Supp. 2d 94, 111 (D.D.C. 2008). D.C. argues that Ms. Faison failed to notify the Mayor of her alleged injury within six months of either the January 2005 non-selection or the September 2005 non-selection, and Ms. Faison offers no facts to either rebut this argument or to suggest the notice requirement should be waived. *See Brown v. United States*, 742 F.2d 1498, 1506 (D.C. Cir. 1984) (finding that "if [D.C. Code §12-309] is not complied with, and there are no grounds for waiver, it bars an action"). Therefore, her claims under the DCHRA must be dismissed.

### IV. CONCLUSION

For the foregoing reasons, the District of Columbia's Motion for Summary Judgment

[Dkt. # 27] will be granted in part and denied in part.  Count I, alleging violations of the DCHRA, will be dismissed.  Count II, alleging violations of the ADEA, will be dismissed with respect to Plaintiff's non-selection in January 2005 for Supervisory Management Analyst (Intake), CB-05-59, and Supervisory Management Analyst (Customer Service Unit), CB-05-560.  Ms. Faison may proceed with Count II with respect to her June 2005 non-selection for Vacancy Number 1312.  A memorializing order accompanies this memorandum opinion.

Date:   October 15, 2009                         _____/s/_____
                                                 ROSEMARY M. COLLYER
                                                 United States District Judge